IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VERONICA BROWN,

                **Plaintiff,**

    v.                                   **1:07-cv-905-WSD**

NORTHSIDE HOSPITAL,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Northside Hospital's

("Defendant" or "Northside") Motion for Summary Judgment [44].[1]

## I.    BACKGROUND

Plaintiff, age fifty-five, was employed by Defendant from 1976 until her

employment terminated in June 2006.[2]  From 1976 until 1997, Plaintiff worked in

---

[1] Plaintiff Veronica Brown ("Plaintiff") filed a Motion for Leave to Respond to Defendant's Reply Brief [63] in response to Defendant's request to strike any reference by Plaintiff to an audio tape and its transcription, which Defendant claims Plaintiff did not produce to Defendant prior to the end of discovery as required by the Federal Rules.  Defendant has neither filed a valid motion to strike nor has Defendant opposed Plaintiff's motion for leave to respond.  Accordingly, Plaintiff's Motion for Leave to Respond is **GRANTED**.

[2] Unless otherwise indicated, the Court draws its factual summary from Defendant's Statement of Undisputed Material Facts [44], Plaintiff's Opposition to Defendant's Statement of Undisputed Material Facts [51] ("Plaintiff's

various hourly positions in the hospital.  In 1999, Plaintiff became a Benefits Specialist in the hospital's benefits department.  In 2001, she became a Retirement Specialist.[3]  As a Retirement Specialist, Plaintiff was responsible for working with the retiring population at the hospital, including acting as liaison with insurance carriers, working with the payroll department regarding Defendant's retirement accounts, transferring payroll files to insurance carriers, administering pension data and providing accurate and timely pension data calculations, and trouble-shooting problems that arose between pension and insurance vendors and retirees.

In September 2004, Plaintiff's direct supervisor was John Rankin.  Rankin reported to Greg Johnson, who served as Manager of Compensation and Benefits. In June 2005, Renee Ruffin was hired to supervise the Benefits department, and she became Plaintiff's direct supervisor, reporting to Johnson.  Ruffin did not have the authority to hire or fire employees, although she apparently did make employment recommendations.

---

Opposition"), and Plaintiff's Statement of Material Facts of Which There Exist Genuine Issues to Be Tried [51] ("Plaintiff's Statement of Material Facts").

[3] Plaintiff claims she was promoted from Benefits Specialist to Retirement Specialist.  See Plaintiff's Opposition to Defendant's Statement of Undisputed Material Facts at ¶ 8.

In the summer of 2005, Plaintiff made two complaints to Johnson about Ruffin's conduct towards her.  Plaintiff alleges she made her first report on June 22, 2005, complaining to Johnson that Ruffin had yelled at her, talked to her in a harsh and condescending manner, and told her to "shut up."  Plaintiff's Opposition ¶ 16.  Johnson said he would talk with Ruffin.  After this report, Ruffin apparently continued to act abusively toward Plaintiff but added comments that she preferred working with younger employees because they were "pliable and easier to work with," "more cooperative," and able to be "molded."  Plaintiff states she made her second complaint in August 2005, telling Johnson that Ruffin treated Plaintiff in a hostile and discriminatory manner and that Ruffin had stated she preferred younger workers.  Plaintiff also stated her belief that Ruffin did not like her because of her knowledge of pension and retirement benefits and because of Plaintiff's age.  Johnson questioned Plaintiff's co-workers about Plaintiff's report, but his inquiries were inconclusive.  Id. at 17.

In October 2005, Plaintiff received a performance rating of 269 out of 300 points, ten points higher than the previous year.  In the Performance Evaluation, jointly filled out by Johnson and Ruffin, Johnson and Ruffin noted Plaintiff's need to "maintain focus of the customers (internal/external) perspective; visit the value

of different communication styles, and enhance leadership skills." They also stated Plaintiff needed to cross-train in other areas into which Plaintiff's department generally had been expanded.

In November 2005, Plaintiff was asked by Johnson about why Plaintiff felt she did not get along with Ruffin. Plaintiff claims she told Johnson that Plaintiff believed it was "because of my knowledge of the pension area and my age."[4] Plaintiff claims Johnson told Plaintiff "to work it out or face termination." Plaintiff's Opposition at ¶ 26.

During her deposition testimony, Plaintiff alleged Ruffin hired temporary employees "and they were all around age 25, which she would speak of them being pliable and just loved being around these babies because they are just so pliable, and this is something that I could work with, as though she could not work with

_____

[4] Plaintiff states in her Opposition to Defendant's Statement of Undisputed Facts that in November 2005, she "went to Johnson for the third time, complaining of age discrimination." Plaintiff's Opposition at ¶ 26. This statement is unsupported and contradicted by Plaintiff's own citations to the record and her testimony. On at least three occasions during her deposition, Plaintiff testified that it was Johnson who approached Plaintiff in November 2005 to discuss her relationship with Ruffin, not Plaintiff approaching Johnson to complain of Ruffin's age discrimination. See Plf. Dep. at pp. 89, 90, 92.

us."  Plaintiff's Deposition at 83-84.  Plaintiff also claimed that Ruffin said "we're going to roll out this old stuff and roll in the new."  <u>Id.</u>

On December 7, 2005, Plaintiff was given a letter of reprimand by Bridget Green (HR Director) ("Green").  Johnson and Ruffin also signed the letter and were present when the letter was delivered.  Specifically, Plaintiff was told of four behaviors she was expected to remedy: 1) stop copying several layers of management on emails; 2) attend all scheduled Department Meetings and work related functions; 3) pay attention to detail when preparing government filings; and 4) show respect for all levels of management.  The written document also stated, "[i]f Veronica is not willing to cooperate in the manner outlined; she could be subject to disciplinary action which may include suspension or termination."  It also stated, "[i]f Veronica is unable to perform in the manner outlined above, HR may make recommendations to search [sic] more suitable job at Northside."  Defendant alleges Plaintiff failed to improve her performance, refused to be supervised by Ruffin, was unwilling to be a team player, and had several other performance issues.

On February 19, 2006, Plaintiff sent an email to Johnson requesting a transfer to another department.  She did not complain of age discrimination in the

email.  Once before this transfer request, on February 15, and once after the request was made, on February 21, Johnson sent emails to Ruffin, Green, and Teresa Dawson-Collier (Employee Relations Manager) outlining Plaintiff's performance issues and listing three available options regarding Plaintiff's employment: 1) termination, 2) immediately removing her from the benefits section and allowing her to search for a position in another department, or 3) allowing her to stay in the benefits section while she looked for another position at the hospital.  Johnson preferred to terminate Plaintiff.  However, after Plaintiff requested a transfer and after Johnson consulted with Dawson-Collier, Johnson chose to remove Plaintiff from her benefits role and to allow her to look for another position in the hospital. Johnson informed Ruffin that he and Dawson-Collier, with Green's concurrence, had decided to transfer Plaintiff and allow her to try to find another position at the hospital.  She was advised that if she did not find another position, her employment with Defendant would be terminated.

On February 28, 2006, Johnson and Ruffin sent Plaintiff a letter informing her that her request for transfer was granted but that if she did not secure another position by March 31, 2006, she would be terminated for cause.  She was also told that if "at any time on or before March 31, 2006 you exhibit insubordination you

will be immediately terminated for cause by your supervisor." Johnson cited Plaintiff's performance and insubordination issues as the reasons she was to be terminated. On March 2, 2006, Plaintiff sent a letter as a rebuttal of the performance issues outlined in the February 28, 2006 letter. Plaintiff claimed Ruffin had made it clear to her that Ruffin preferred a younger team.

On March 31, 2006, Plaintiff was granted an extension until April 28, 2006 to secure, with the help of a recruiter, an alternate position at Northside, and she was allowed to work in a temporary assignment at Defendant's hospital in Forsyth County. In April 2006, Pamela Batts-Brown, who is under forty-years old and who previously worked with Ruffin at another company, filled Plaintiff's position. On April 25, 2006, Plaintiff sent a letter to Dwight Hill, Northside Hospital Vice President, alleging that her work environment had become hostile and that she was being forced out of her employment because of her age. On April 27, 2006, Green informed Plaintiff that Defendant was enlisting a third-party investigator to investigate Plaintiff's allegations of age discrimination.[5] On May 31, 2006, Johnson and Dawson-Collier met with Plaintiff. Plaintiff was informed that her

---

[5] The third-party investigator was McGuireWoods, LLP, whom Plaintiff alleges is Defendant's outside counsel. Plaintiff's Response p. 26.

last day of employment was June 2, 2006, and that the independent investigation of her complaint concluded there was no evidence of age discrimination.

On April 23, 2007, Plaintiff filed her Complaint [1], asserting claims of discrimination, harassment, and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act, *as amended*, 42 U.S.C. § 2000e *et seq.*

## II.    DISCUSSION

Plaintiff asserts three claims.  First, Plaintiff claims she was terminated because of her age.  Second, Plaintiff alleges Defendant subjected her to a hostile work environment.[6]  Finally, she alleges Defendant retaliated against her by writing her up for performance issues and eventually terminating her after she complained about her supervisor's alleged discriminatory conduct.  Defendant moves for summary judgment on the grounds that Plaintiff: 1) has no evidence of

---

[6] Plaintiff appears to have abandoned her hostile work environment claim. Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274 (11th Cir. 2003) (a party cannot pursue a claim that it failed to raise in its opposition brief to a motion for summary judgment); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (claim abandoned where argument was not presented in initial response to motion for summary judgment).  Plaintiff has not refuted any of the arguments raised by Defendant regarding her claim for hostile work environment. Accordingly, the Court finds Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

direct discrimination; 2) cannot establish a *prima facie* case of age discrimination or that the articulated reasons for her termination were merely pretexts for age discrimination; and 3) cannot establish a *prima facie* case of retaliation.

    A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's

favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

      B.     Defendant's Motion for Summary Judgment

          1.    Plaintiff's ADEA Discrimination Claim

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Plaintiffs seeking to establish intentional discrimination under the ADEA may do so using direct or circumstantial evidence.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).

Plaintiff argues Ruffin's alleged discriminatory comments constitute direct evidence of age discrimination.  Specifically, Plaintiff points to Ruffin's alleged statements that she preferred younger employees because they are pliable and easier to work with, that "younger people are more cooperative and easier to work with," and that she liked working with "the babies" when referring to two young temporary employees.

Direct evidence is evidence "which itself proves the existence of discrimination and does not require inference or interpretation, as for example a frank admission from a manager that he refused to hire an applicant because he was black or because she was female."  Cooper v. Southern Co., 390 F.3d 695, 724 n.15 (11th Cir. 2004).  In an age discrimination context, "the quintessential example of direct evidence would be a management memorandum saying, 'Fire Earley – he is too old.'" Merritt v. Dillard Paper Co., 120 F.3d 1181, 1190 (11th Cir. 1997) (quoting Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)).  "As would be expected, such direct evidence is encountered only infrequently, since direct evidence 'is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor.'" Cooper, 390 F.3d at 724 n. 15 (quoting Schoenfeld v.

-11-

Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)).  Having reviewed the comments cited by Plaintiff, the Court finds they do not constitute direct evidence of age discrimination because they do not specifically refer to Plaintiff, do not state the reason for Plaintiff's discharge, or Ruffin's attitude toward older employees generally.  Plaintiff admitted when she was deposed that Ruffin never said she could not or would not work with older employees or that older employees were not flexible or were less cooperative.  There is no direct evidence in the record that Ruffin considered Plaintiff not flexible or difficult to work with.  See Pl. Dep. at p. 84.  Indeed, any reference to younger employees apparently related to two temporary employees with whom Ruffin worked.  There is no evidence of comments Ruffin made about permanent employees who worked for Defendant. These comments about two specific temporary employees do not by themselves prove the existence of age discrimination without inference or interpretation.  See Bates v. Variable Annuity Life Ins. Co., 200 F. Supp. 2d 1375, 1381 (N.D.Ga. 2002) (holding that none of supervisor's allegedly ageist comments, including statements encouraging the plaintiff to retire, "even comes close to satisfying [the] rigorous standard [for direct evidence]").

In the absence of direct evidence, Plaintiff may use the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to show there is circumstantial evidence of discrimination.  Under this framework, Plaintiff first must establish a *prima facie* case of discrimination with respect to the adverse employment action in question.  <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000).  If Plaintiff makes this *prima facie* showing, Defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>Id.</u>  If Defendant satisfies this requirement, the burden then shifts to Plaintiff to show Defendant's legitimate, non-discriminatory reason is a pretext for unlawful discrimination.  <u>Id.</u>

   a.    *Prima Facie Case*

   To establish a *prima facie* case of age discrimination, Plaintiff must show (1) she was in the age group protected by the ADEA (at least forty years of age); (2) she was adversely affected by an employment decision; (3) she was qualified for the position at issue; and (4) she was replaced by someone substantially younger.  <u>See</u> <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1359-60 (11th Cir. 1999).  The first, second, and fourth elements of Plaintiff's *prima facie* case are undisputed.  The parties agree Plaintiff, age 53 at the time of

the alleged discrimination, is a member of the ADEA's protected class and was replaced by someone substantially younger. The second element is also undisputed because Plaintiff was terminated from her post.

Defendant argues that Plaintiff cannot establish a *prima facie* case because Plaintiff was not qualified to do her job. To support this argument, Defendant claims Plaintiff: 1) refused to be supervised by Ruffin; 2) refused to be counseled by Johnson; and 3) continued to give incorrect information to employees after being counseled not to do so. Specifically, Plaintiff was counseled by Ruffin and Johnson to attend department meetings, pay attention to detail, show respect to all levels of management, and cease copying layers of management about performance issues. Defendant contends Plaintiff failed and refused to comply with management's directives and supervision.

Defendant's arguments miss the point. This evidence addresses Plaintiff's job performance as a Retirement Specialist, not whether she was minimally qualified for the position to which she was assigned. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998); Lane v. Ogden Entm't, Inc., 13 F. Supp. 2d 1261, 1275 (M.D. Ala. 1998) ("Consistent with long-standing precedent that plaintiff's prima facie burden is not an onerous one, the Eleventh

-14-

Circuit has held that the [qualification] element of the prima facie case . . . [requires] that plaintiff satisfies the minimum qualifications of the job.").  Based on Plaintiff's significant experience as a Benefits and Retirement Specialist and her performance evaluations by Defendant, the Court finds she was qualified for this position.

The Court next considers the second prong of the <u>McDonnell Douglas</u> analysis–whether Defendant has articulated a legitimate, non-discriminatory reason for its termination of Plaintiff.

> b.    *Legitimate, Non-Discriminatory Reason*

Assuming Plaintiff can make her *prima facie* case, Defendant argues it is entitled to summary judgment because Defendant had legitimate, non-discriminatory, non-pretextual reasons to discharge Plaintiff.  A defendant's burden in articulating a legitimate, non-discriminatory reason for its employment action is "exceedingly light."  <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 (11th Cir. 1997).

Defendant claims Plaintiff was given in her October 2005 evaluation specific issues she needed to address.  The evaluation was conducted by Johnson and Ruffin.  On December 7, 2005, Plaintiff was given a written reprimand by

Green (of Defendant's HR Department), Johnson and Ruffin regarding: 1) the need to cease her practice of copying several layers of management on emails; 2) the requirement to attend department meetings and be a team player; 3) the need properly to prepare government filings; and 4) the necessity to show respect for all levels of management.  About two months later, on February 19, 2006, Plaintiff requested a transfer.  The transfer request was granted, although Plaintiff had to find a position within the hospital to which to transfer.  She was given 90 days to find another position at the hospital.  If she was unable to find another job, she was told her employment would be terminated.  Defendant has proffered several performance-based issues as the reasons for Plaintiff's termination, and thus has advanced a legitimate, nondiscriminatory reason for Plaintiff's discharge.

      c.   *Pretext*

Defendant, having articulated a legitimate, nondiscriminatory reason for its decision, to avoid summary judgment, Plaintiff must present sufficient evidence from which a reasonable juror could conclude Defendant's stated reasons were a pretext for unlawful age discrimination.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 921 (11th Cir. 1993).  The Court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could find them unworthy of credence."

Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation and

citations omitted).

Plaintiff claims the stated reasons for her discharge were pretexts for age

discrimination.  Plaintiff bases her claim of pretext on alleged evidence that: 1)

Defendant praised Plaintiff for the identical alleged misconduct before Plaintiff

complained of discrimination; 2) Defendant's explanations for terminating Plaintiff

are inconsistent, evasive and unworthy of belief; and 3) Ruffin made comments

about two young temporary workers to the effect that they were "more pliable,"

"easy to work with," and that Ruffin had commented that it was out with the old

and in with the new, which Plaintiff claims was a reference to terminating older

employees.

While the evidence may support that Ruffin was a rude and perhaps

ineffective manager, rude and ineffective work conduct does not support a claim of

age discrimination.  In fact, a careful examination of the facts shows Plaintiff's

interpretation of Ruffin's conduct as discriminatory is not supported by the facts.

For example, Plaintiff claims Ruffin's comment of wanting to "roll out this old

stuff and roll in the new" is evidence Ruffin intended to discriminate against

Plaintiff by "rolling" her out.  Plaintiff's self-serving interpretation of this

comment is discredited by Plaintiff's own testimony.  Plaintiff first referred to the

"roll out" comment early in her deposition when she was asked to describe

instances of Ruffin's alleged discrimination.  Plaintiff testified:

> A(Plf):  There was just – there were just things and you
> can't say exactly that they were targeted at you.  But if
> you're the oldest person in the room, who else would it
> be?  She would say stuff like we're [sic] got to roll out all
> this old stuff and roll in the new.
>
> Q:  What was she referring to or what do you believe she was
> referring to?
>
> A:  She was referring to me, because she would say it often,
> Veronica, things are going to change around here and
> you will not be a specialist.

Plf. Dep. at p. 86.

This testimony alone suggests the change was about job functions–not the

displacement of employees based on age.  In fact, "roll out all this old stuff"

referred to eliminating job functions irrespective of the age of the person who filled

the job.  That the statement pertained to a job category was admitted by Plaintiff

when she was pressed on the meaning of the "roll out all this old stuff" comment:

Q:      And what were the circumstances surrounding that
        conversation?

A(Plf): She was assuring me that when I came back from surgery
        there would be changes.

Q:      And what things –

A:      I don't know.  I don't know why she said it.  I didn't
        question it.

Q:      How did the conversation begin?

A:      She walked up to me and said, Veronica, when you come
        back, there will be changes and there will be no more
        specialists.

Q:      Who else was a specialist?

A:      Felicia Clayton, she was a benefits specialist.  Felicia was
        the only other specialist.

Id. at p. 87.  Plaintiff earlier testified that Ms. Clayton is 36 years old.  Id. at p. 73.

The evidence is conclusive that rolling out the old referred to old job duties, not

older employees.  Plaintiff simply imagines discrimination where it does not exist.

No reasonable juror could conclude to the contrary.[7]

_____

        [7] Still later in her deposition, Plaintiff admitted she simply assumed this
discussion related to age:

        Q:      You said that she [Ruffin] said she was going to roll out
                the old and roll in the new, and that was in relationship to
                she had the power to make staffing changes?

Plaintiff cites her October 2005 performance evaluation as "direct contradiction" of Defendant's "behavior problem" theory.  The evaluation, completed by Johnson and Ruffin, gave Plaintiff the highest possible scores in the following areas: 1) takes pride in Northside; 2) treats people as individuals with courtesy, dignity, respect, and politeness; and 3) provides information and explanations.  Plaintiff contends criticism of her performance began only after she complained to Johnson about Ruffin's treatment and discriminatory comments.  Plaintiff also cites apparent contradictions in Defendant's witnesses' testimony.  Plaintiff argues Johnson was untruthful when he testified that Plaintiff never complained to him of age discrimination, and that Johnson and Ruffin were untruthful when they testified Ruffin has no hiring or firing authority.  Finally, Plaintiff argues that Defendant's hiring of its counsel to serve as an independent

---

|         |         |
|---------|---------|
| A (Plf): | Exactly, but we were her staff. |
| Q:      | Okay.  But you assumed that she meant roll out the old employees, meaning older employees, people in terms of their age, and roll in newer employees in terms their age, is that what your assumption was? |
| A:      | That was my assumption.  I was old. |
| Q:      | Okay.  But she didn't say it related to age? |
| A:      | All I can say, you had to be there. |

Plf. Dep. at p 134.

third-party to investigate Plaintiff's initial claims of age discrimination is also somehow evidence of untruthfulness or evasiveness.[8]

Plaintiff has not presented any credible evidence, other than conjecture, to refute Defendant's witnesses' sworn testimony that Ruffin did not have hiring and firing authority. Both Ruffin and Johnson testified that Ruffin did not have hiring and firing authority and the most she could do was make recommendations to Johnson.[9] Plaintiff has not presented any evidence that Ruffin terminated Plaintiff or even that she recommended she be terminated.[10] Johnson, who is over forty

---

[8] It is not clear to the Court what Plaintiff's argument is with respect to how Defendant conducted its internal investigation. Plaintiff has not presented any evidence that the third-party was biased or that the investigation was tainted in form or substance.

[9] There is no evidence that Johnson, Green or any other employee of the Defendant had any age-based animus toward Plaintiff or any other person.

[10] Plaintiff attempts to use the transcription of an audiotaped telephone conversation as evidence of both Defendant's untruthfulness and that Ruffin had termination authority. During the conversation, Johnson and Ruffin inform another Northside employee, Angela Aker, of Aker's termination. Ruffin's mere presence on the call is not evidence of her authority to terminate, especially where Johnson, the person who was authorized to terminate Plaintiff, was the party who terminated Aker. The audiotape is not evidence of Defendant's untruthfulness. When Johnson was asked in his deposition who was involved in Aker's termination, he stated he had a face-to-face conversation with Aker, not a telephone conversation in which he advised Aker she was discharged. There is no evidence Ruffin was present when this face-to-face discussion between Johnson

years old, testified he alone made the decision to terminate Plaintiff.  And, there is no evidence Johnson had any age animus toward Plaintiff or any other person. "[W]hen the decision makers are in the same protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about."  Holston v. Sports Auth., Inc., 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000); see also Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991).

Plaintiff simply has not presented evidence even suggesting Defendant's reasons for termination were mere pretext.  It is undisputed that Plaintiff's October 2005 evaluation contained certain areas for Plaintiff to improve.  Defendant has stated these areas were not addressed and because they were not, Plaintiff would not be allowed to continue in her old job.  While that job opportunity was foreclosed, Plaintiff was allowed over three months to find another job in the hospital—a fact which itself discredits that Defendant intended to terminate Plaintiff based on her age.  Plaintiff has not presented evidence that she complained to Johnson of age discrimination other than her testimony that she allegedly told

───────────────

and Aker occurred.

Johnson in November 2005 that Ruffin did not like her because of her age,[11] which is not evidence of any discriminatory notice on Johnson's part.  That is, no reasonable juror would input to Johnson discriminatory animus based on Plaintiff's speculative belief that someone else disliked her because of her age.

Finally, Plaintiff has not presented sufficient evidence that Ruffin "made it clear that she wanted a younger tea [sic]."[12]  In short, Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude the stated reasons were pretext for unlawful age discrimination.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 921 (11th Cir. 1993); Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

---

[11] In fact, Plaintiff admits in her opposition to Defendant's Statement of Material Facts that her April 25, 2006 letter to Hill (Northside Hospital Vice President) was the first time she alleged she was being forced out of her employment because of her age.  See Defendant's Statement of Material Facts at ¶ 63, Plaintiff's Opposition at p. 1.

[12] Plaintiff references three other individuals as evidence of Ruffin's intentions: Angela Aker, Stephany Woods, and Judith Meroney.  Aker was age 38 at the time of her termination; Woods, age 47, voluntarily resigned from Northside; and Meroney, also over age 40, was promoted.

2.      Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation under the Title VII, Plaintiff must show:  (1) she engaged in activity protected under Title VII; (2) she subsequently suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action.  Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).

Plaintiff contends that she has established a *prima facie* case under the opposition clause of Title VII.  To establish a prima facie case of retaliation under the opposition clause, the employee must show that she opposed a particular discriminatory policy in which she had a good faith belief that her employer was engaged.  Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (1tth Cir. 1997).  Plaintiff argues she opposed Ruffin's discriminatory comments and treatment starting June 2005.

Defendant alleges Plaintiff has not shown she had a good faith belief that these issues were unlawful or that such a belief was objectively reasonable.  See Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1312-13 (6th Cir. 1989) (held "that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment

practice."); Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1074

(11th Cir. 1995) ("Unfair treatment, absent discrimination based on race, sex, [age]

or national origin, is not an unlawful employment practice under Title VII.").

However, Plaintiff need not prove the underlying discriminatory conduct alleged

was actually unlawful in order to establish a prima facie case and overcome a

motion for summary judgment.  Little v. United Technologies, 103 F.3d 956, 960

(11th Cir. 1997).

Plaintiff had not engaged in a protected activity prior to her being informed

on February 28, 2006 that she would be terminated if she failed to find alternate

employment at Northside.  Even when her complaints were made, Plaintiff offered

only vague comments and claims of alleged unfair treatment.  Plaintiff's

complaints prior to her April 25, 2006 letter (which Defendant maintains, and

Plaintiff admits, is the first time Plaintiff complains she is being forced out of her

employment because of her age) consisted only of Plaintiff's opinion that Ruffin

was disrespectful toward her because of her age.  Disrespect or unfair treatment do

not constitute unlawful employment practices.

Defendant also argues that Plaintiff has failed to show that her alleged

activities were causally connected to her termination.  To establish the causal

relation element of a prima facie case of retaliation, a plaintiff need only show that the protected activity and the adverse action are not completely unrelated. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998) (internal quotations omitted).  However, a plaintiff still must show the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were somewhat related in close temporal proximity.  Gupta v. Fl. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (noting a three-month interval between the protected speech and adverse act is too long, standing alone, to establish an inference of retaliation).

The record shows that even after Plaintiff complained to Johnson in the summer of 2005, she still received an excellent evaluation from both Johnson and Ruffin.  While Plaintiff did complain again in November 2005, and received a written reprimand in December 2005, she learned of her termination on or about February 28, 2006, after she requested a transfer.  Plaintiff was then given approximately ninety days to find alternate employment at Northside, a search in which Defendant gave Plaintiff the assistance of a job recruiter.[13]  Only if she

---

[13] Plaintiff appears to argue Defendant never intended to transfer Plaintiff with the intent of assisting Plaintiff in finding employment at another Northside location.  See Plaintiff's Statement of Material Facts at ¶ 5.  Plaintiff attempts to

could not find a replacement job was her employment to be terminated.  Plaintiff simply has not presented sufficient evidence to establish a *prima facie* case for retaliation.

## III.    CONCLUSION

Plaintiff simply has not presented sufficient facts from which a reasonable juror could find that Defendant discriminated against her based on her age or retaliated against her based on complaints about age discrimination.  Accordingly, for the reasons discussed in this opinion,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [44] is **GRANTED**.

**SO ORDERED** this 24th day of April, 2008.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

argue that her because her position at the other location was only temporary, that somehow evidences Defendant's discriminatory intent.  Plaintiff also somehow argues Defendant's hiring of a replacement employee younger than Plaintiff–after Plaintiff requested and was granted a transfer–is evidence of discrimination.  These arguments are not credible and are based on speculation and conjecture.